**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| A/Z CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>MATT CARR ELECTRIC LLC and<br>MATTHEW R. CARR,<br><br>Defendants. | CIVIL ACTION<br>Docket No: |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff A/Z Corporation ("A/Z") complains against Defendants Matt Carr Electric LLC ("Carr Electric") and Matthew R. Carr ("Carr") as follows.

**INTRODUCTION**

1. In September 2025, A/Z contracted with Carr Electric to perform electrical and related work on an airport terminal project for a contract price of $5,501,500.00. Shortly after that, Carr submitted a signed, itemized application for payment and a sworn, notarized lien-waiver affidavit representing that Carr Electric had completed or would imminently complete $799,022.76 of that work, and A/Z paid Carr Electric $719,120.48 – representing the full amount requested less retainage.

2. Carr Electric performed only a small fraction of the work for which it was paid. A 2-3 person crew mobilized to the site briefly, installed a limited quantity of underground conduit and temporary power, delivered some conduit and floor boxes, and produced ten of one hundred thirty-four required submittals – then abandoned the Project entirely, having provided a small fraction of the value of the $719,120.48 it collected.

3. On information and belief, Carr, the sole member of Carr Electric and its registered clerk, personally drew the payment, then diverted the funds to purposes other than the Project, leaving its own suppliers and subcontractors unpaid.

4. A/Z brings this action to recover the $719,120.48 it paid for work that was not performed, together with its costs to complete Carr Electric's abandoned scope, given Carr Electric's and Carr's breach of contract, abuse of the corporate form, and alternatively for negligent misrepresentation, unjust enrichment, and money had and received.

## PARTIES

5. Plaintiff A/Z Corporation is a corporation organized under the laws of the State of Connecticut with its headquarters and principal place of business in Connecticut. A/Z is therefore a citizen of Connecticut. 28 U.S.C. § 1332.

6. Defendant Matt Carr Electric LLC is a limited liability company organized under the laws of the State of Maine. On information and belief, its sole member and principal is Matthew R. Carr, a citizen of Maine. Because the citizenship of a limited liability company is that of its members, Carr Electric is a citizen of Maine for purposes of diversity jurisdiction. *Pramco, LLC ex rel. CFSC Consortium, LLC v. San Juan Bay Marina, Inc.*, 435 F.3d 51, 54 (1st Cir. 2006).

7. Matthew R. Carr is liable in his personal capacity because he personally exercised complete control over Carr Electric, personally drew and diverted the $719,120.48 payment, and abused the corporate form of Carr Electric, LLC, in such a manner and under such circumstances that recognition of the separate corporate form would be unjust.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because this action is between citizens of different States and the matter in controversy exceeds $75,000, exclusive of interest and costs.

9. Complete diversity of citizenship exists: A/Z is a citizen of Connecticut, and both Defendants are citizens of Maine.

10. The amount in controversy exceeds $75,000, exclusive of interest and costs: A/Z paid Carr Electric $719,120.48 for work that was almost entirely unperformed, and A/Z seeks to recover at least that sum.

11. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to A/Z's claims occurred in this District and because Defendants reside in this District.

## GENERAL ALLEGATIONS

### The Subcontract

12. A/Z served as construction manager/general contractor for the Presque Isle Terminal Project at the PQI Airport terminal in Presque Isle, Maine.

13. On or about September 10, 2025, A/Z engaged Carr Electric under Contract No. CP0037-C024 (the "Subcontract") to perform electrical and related work on the Project, for a total contract price of $5,501,500.00. A true and correct copy of the Subcontract is attached hereto as Exhibit A.

14. The Subcontract required Carr Electric to submit applications for payment supported by a trade contractor's schedule of values itemizing the work completed, and to certify the accuracy of each application before A/Z would pay it.

### The Pay Application and Payment

15. On or about November 28, 2025, Carr submitted to A/Z the first application for payment under the Subcontract.

16. In that application, Carr certified, line item by line item, that Carr Electric had completed and/or stored work on the Project totaling $799,022.76—representing completed

generator, lighting, switchgear, conduit, wire, equipment, labor, fire-alarm, security, data, engineering, administrative, commissioning, and material work.

17. The application for payment included a sworn Trade Contractor's Affidavit of Partial Payment, Partial Waiver and Release of Liens, dated November 28, 2025, and subscribed and sworn to by Carr before a notary public in Penobscot County, Maine, seeking payment in the amount of $719,120.48 for the work Carr represented had been performed.

18. In consideration of and conditioned upon that application and affidavit, A/Z paid Carr Electric $719,120.48. This was the first and only payment made under the Subcontract.

**Carr Electric's Nonperformance and Abandonment**

19. Carr Electric performed only a small fraction of the work for which it was paid. Its crew mobilized to the site on or about November 4-5, 2025, and installed a limited quantity of underground conduit; installed a temporary power pole, meter enclosure, and 200-amp panel; delivered some conduit and floor boxes (with incorrect covers); and produced ten of one hundred thirty-four required submittals. Carr Electric produced none of the generator, lighting, switchgear, wire, fire-alarm, security, or data materials, performed no commissioning work, and did not participate in the coordination of Building Information Modeling.

20. Carr Electric thereafter ceased all work and abandoned the Project, and Carr and Carr Electric failed to respond to A/Z's repeated requests for status updates, required submittals, coordination, and performance of contractual obligations.

21. On March 26, 2026, A/Z issued a written notice of default affording Carr Electric 48 hours to cure; Carr Electric did not cure.

22. On April 8, 2026, A/Z terminated the Subcontract for cause, citing Carr Electric's failure to provide skilled workers, materials, and equipment; failure to maintain the Project

schedule; interference with and delays to the Project; failure to pay its subcontractors and suppliers; and abandonment of the work.

23. On information and belief, in April and May 2026 – immediately following termination of Carr Electric – Carr personally purchased several expensive, brand-new vehicles, including a motorcycle and a pick-up truck.

**Carr Electric's Administrative Dissolution and Cessation of Operations**

24. On information and belief, Carr Electric has been administratively dissolved. Carr is the sole member of Carr Electric and its registered clerk.

25. On information and belief, Carr Electric has not undertaken or performed any project since abandoning the Project, has no ongoing operations, and has no assets with which to satisfy a judgment.

**A/Z's Costs to Complete**

26. A/Z has had to complete Carr Electric's abandoned electrical, communications, and security scope by engaging replacement contractors and procuring materials and equipment directly.

27. The replacement costs incurred and paid by A/Z exceed A/Z's budget for that work, which was premised on the price A/Z had agreed to pay Carr Electric, by $1,317,494.01.

**COUNT I — BREACH OF CONTRACT**
**(Matt Carr Electric LLC)**

28. A/Z repeats and realleges the factual allegations in each and all the foregoing paragraphs as if fully set forth herein.

29. The Subcontract was a valid and binding contract between A/Z and Carr Electric.

30. Carr Electric materially breached the Subcontract by, among other things, failing to timely perform the work, provide sufficient skilled workers, materials, and equipment; failing to maintain the Project schedule; failing to pay its subcontractors and suppliers; and abandoning the work.

31. Carr Electric's breach has damaged A/Z. A/Z's damages include $669,120.48 A/Z paid for work Carr Electric did not perform, plus A/Z's costs to complete Carr Electric's scope through replacement subcontractors, less the unpaid balance of the Subcontract price. Those completion costs exceed A/Z's budget for the work by $1,317,494.01. A/Z is also entitled to the attorney's fees, consultant, and project-management costs, overhead and profit, and 12% interest for which Carr Electric is liable pursuant to the Subcontract.

**COUNT II – PIERCING THE CORPORATE VEIL**
**(Matthew R. Carr)**

32. A/Z repeats and realleges the factual allegations in each and all the foregoing paragraphs as if fully set forth herein.

33. Maine permits a court to disregard the separate existence of a limited liability company and to hold its member individually liable where the plaintiff shows (1) that the member abused the privilege of a separate corporate identity, and (2) that an unjust or inequitable result would occur if the court recognized the separate corporate existence. Piercing the corporate veil is an equitable remedy available upon a showing of both misuse of the corporate form and an inequitable result.

34. On information and belief, Carr is the sole member of Carr Electric and exercised complete dominion over it, treating the company as his instrumentality. He personally prepared, signed, swore to, and submitted the payment application and lien-waiver affidavit on which A/Z made the $719,120.48 payment.

35. On information and belief, Carr caused Carr Electric to draw the $719,120.48 payment and then diverted or applied those funds to purposes other than the Project, while causing Carr Electric to leave its own subcontractors and suppliers unpaid — siphoning the company's funds and leaving it undercapitalized and unable to meet its Project obligations.

36. Recognizing Carr Electric's separate existence would produce an unjust and inequitable result, allowing Carr to keep for himself a payment he obtained for a company he dominated and stripped of assets, while leaving A/Z's claims unsatisfied. Carr is therefore individually liable for the obligations of Carr Electric alleged in Count I, IV, and V.

**COUNT III — NEGLIGENT MISREPRESENTATION**
**(Matt Carr Electric LLC and Matthew R. Carr)**

37. A/Z repeats and realleges the factual allegations in each and all the foregoing paragraphs as if fully set forth herein.

38. In submitting the application for payment and the sworn Trade Contractor's Affidavit of Partial Payment, Partial Waiver and Release of Liens, Carr Electric and Carr supplied false information to A/Z for its guidance in a business transaction in which Carr Electric and Carr had a pecuniary interest – namely, obtaining payment under the Subcontract. *Chapman v. Rideout*, 568 A.2d 829, 830 (Me. 1990); *Binette v. Dyer Library Ass'n*, 688 A.2d 898, 903 (Me. 1996).

39. The information was false: the application and affidavit represented that Carr Electric had completed or stored or would imminently complete work valued at $799,022.76, when in fact Carr Electric had performed only a small fraction of that work and abandoned the Project following payment.

40. Carr Electric and Carr failed to exercise reasonable care or competence in obtaining or communicating that information. *Rand v. Bath Iron Works*, 2003 ME 122, ¶ 13, 832 A.2d 771, 774-75.

41. A/Z justifiably relied on the application and affidavit in paying Carr Electric $719,120.48.

42. As a direct and proximate result of that justifiable reliance, A/Z suffered pecuniary loss, including at least $669,120.48 it paid for work that was not performed. *Chapman*, 568 A.2d at 830.

43. Carr is individually liable for this negligent misrepresentation because Carr personally prepared, signed, swore to, and submitted the pay application, and a corporate officer or member who personally participates in a tort is individually liable for his own tortious acts, independent of any veil piercing. *Advanced Constr. Corp. v. Pilecki*, 2006 ME 84, ¶ 13, 901 A.2d 189.

**COUNT IV — UNJUST ENRICHMENT**
**(Matt Carr Electric LLC — Pleaded in the Alternative)**

44. A/Z repeats and realleges the factual allegations in each and all the foregoing paragraphs as if fully set forth herein.

45. Unjust enrichment requires that the plaintiff conferred a benefit on the defendant, that the defendant appreciated or knew of the benefit, and that the defendant's retention of the benefit without payment of its value would be inequitable.

46. A/Z conferred a benefit on Carr Electric by paying it $719,120.48. Carr Electric knew of and accepted that benefit.

47. Carr Electric's retention of the $719,120.48 is inequitable because A/Z paid that sum for work that Carr Electric largely did not perform, and Carr Electric abandoned the Project without providing the value for which A/Z paid.

48. This claim is pleaded in the alternative to A/Z's contract claim; a factfinder that declines to enforce the Subcontract may nonetheless award A/Z the value of the benefit unjustly retained. *June Roberts Agency, Inc. v. Venture Props., Inc.*, 676 A.2d 46 (Me. 1996). A/Z is entitled to restitution of $719,120.48.

**COUNT V — MONEY HAD AND RECEIVED**
**(Matt Carr Electric LLC — Pleaded in the Alternative)**

49. A/Z repeats and realleges the factual allegations in each and all the foregoing paragraphs as if fully set forth herein.

50. An action for money had and received lies whenever a defendant has in its possession money that in equity and good conscience belongs to the plaintiff; in such circumstances the law implies a promise to repay it.

51. Carr Electric received $719,120.48 from A/Z that in equity and good conscience belongs to A/Z, because A/Z paid it for work that was largely not performed.

52. The law implies Carr Electric's promise to repay that sum to A/Z, and A/Z is entitled to restitution of $719,120.48.

**PRAYER FOR RELIEF**

WHEREFORE, A/Z Corporation respectfully requests that this Court:

A. Enter judgment for A/Z on Count I (Breach of Contract) against Matt Carr Electric LLC, and Count III (Negligent Misrepresentation) against Matt Carr Electric, LLC, and Matthew R. Carr individually, and award A/Z its damages – including the $669,120.48 paid for work not performed and the cost to complete Carr Electric's scope, less the unpaid Subcontract balance –

together with contractual attorney's fees, costs, overhead and profit, and interest at twelve percent per annum;

B. In the alternative, enter judgment for A/Z on Count IV (Unjust Enrichment) and/or Count V (Money Had and Received) against Matt Carr Electric LLC and award A/Z restitution of $669,120.48;

C. Enter judgment on Count II disregarding the separate existence of Matt Carr Electric LLC and holding Matthew R. Carr individually liable for the sums awarded on Counts I, IV, and V, and impose a constructive trust over the $669,120.48 and its traceable proceeds;

D. Award A/Z pre- and post-judgment interest and its costs of suit; and

E. Grant such other and further relief as the Court deems just and proper.

**JURY DEMAND**

A/Z demands a trial by jury on all claims so triable.

Dated: September 23, 2026

*/s/ Matthew O. Altieri*
Matthew Altieri, Esq.
PIERCE ATWOOD LLP
Merrill's Wharf
254 Commercial Street
Portland, ME 04101
207-791-1100

*Attorneys for Plaintiff A/Z Corporation*

**CERTIFICATE OF SERVICE**

I certify that the within document was electronically filed with the clerk of the court on September 23, 2026, and that it is available for viewing and downloading from the Court's ECF system.

*/s/ Matthew O. Altieri*